# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JUSTIN L. BRAUN, | : |
| | : |
| and | : |
| | : |
| LAURA BRAUN, | : |
| | : |
| Individually and as Parents and Next Friends | : |
| of their minor children: | : |
| JLB (DOB 02/23/2010) | : |
| JGB (DOB 08/15/2012) | : |
| | : |
| All of | : |
| 6142 Llanfair Drive | : |
| Columbia, Maryland 21044 | : |
| | : |
| Plaintiffs, | : |
| | : |
| v. | :   Civil No. |
| | : |
| AMAZON.COM, INC., d/b/a | : |
| AMAZON.COM, a Corporation | : |
| a/k/a AMAZON.COM SERVICES, INC. | : |
| a/k/a AMAZON.COM SERVICES, LLC | : |
| 251 Falls Drive | : |
| Wilmington, Delaware 19808 | : |
| | : |
| Serve on: | : |
| Corporation Service Company | : |
| 251 Falls Drive | : |
| Wilmington, Delaware 19808 | : |
| | : |
| Defendant. | : |

**********************************************************************************************

## COMPLAINT

COMES NOW the Plaintiffs, Justin L. Braun and Laura Braun, Individually and as

Parents and Next Friends of their minor children, JLB and JGB, and file this Complaint

against the Defendant AMAZON.COM, INC., and for causes of action state:

1

## JURISDICTION AND VENUE

1.  Justin Braun and Laura Braun are the natural parents of their minor children JLB and JGB.  They commence this action Individually and as Parents and Next Friends of the two minor children.

2.  At all times relevant hereto, the family resided at 6142 Llanfair Drive, Columbia, Howard County, Maryland 21044.

3.  Defendant AMAZON.COM, INC., d/b/a AMAZON.COM, a Corporation, a/k/a AMAZON.COM SERVICES, INC., a/k/a AMAZON.COM SERVICES, LLC (hereinafter "Amazon") was incorporated in the State of Washington in 1994 and reincorporated in the State of Delaware in 1996.  Amazon's principal corporate business address in the State of Washington is 325 9th Ave. N. Seattle, Washington  98109-5210.  Amazon's registered business address in the State of Delaware is 251 Little Falls Drive, Wilmington, Delaware 19808.

4.  Venue is proper in this Court pursuant to 28 U.S.C. Section 1391(b)(2) and 1391(d).  At all relevant times hereto, Amazon was and is an American multinational technology company regularly engaged in the business of sales of numerous consumer products, as well as cloud computing, online advertising, digital streaming, researching the safety of products it offers for sale, testing, modifying, labeling, assembling, offering for sale, inspecting, servicing, repairing, marketing, labeling, warning and re-branding consumer products manufactured by others throughout the State of Maryland including but not limited to Howard County where Plaintiffs reside, where the defective products that are the subject of this litigation were ordered, purchased, and delivered as well as where the injuries to the minor Plaintiffs occurred.  In addition, Amazon owns real property

throughout Maryland and regularly: conducts extensive business including sales of consumer products; supplies goods and services; advertises its products; and derives substantial income from its activities in this State.  Maryland is also where the negligence complained of occurred and where the injuries to the Plaintiffs occurred.

5.  The amount of this claim exceeds the required jurisdictional limit, and venue is also proper in this United States District Court, pursuant to 28 U.S.C. § 1332 due to diversity of citizenship among the parties.

6.  The consumer products noted in paragraph 4 above include toy products and other articles intended for use by children which Amazon sells, labels, markets, warrants, brands, inspects, conducts independent safety research on, advertises and distributes to members of the general public and consumers such as the minor Plaintiffs JLB and JGB and their parents in the regular course and scope of business and did otherwise place in the stream of commerce such toy product.

7. Plaintiffs reside in Maryland and the Defendant is incorporated both in the State of Washington and the State of Delaware.

## OPERATIVE FACTS

8. On December 18, 2022, Plaintiff Laura Braun researched the Amazon website for Christmas presents for her two minor children and after viewing website content and photographs ordered online from Amazon and paid by credit card for a XIOYIG Tabletop Fire Pit described as a *Portable Concrete Fire Pit, Fire Bowl, Mini Personal Fireplace* for the advertised price of $35.99.  The Amazon order number was 114-2634426-1414637.

9. The aforementioned Amazon website marketed and advertised the XIOYIG Tabletop Fire Pit as a great Christmas present for use by young children and displayed

in their advertising photographs showing young children using it as a toy without any adult supervision present.

10. This consumer product was shipped on December 19, 2022, and delivered by Amazon to the Braun family address at 6142 Llanfair Drive, Columbia, Howard County, Maryland 21044, on December 20, 2022.

11. On December 18, 2022, Plaintiff Laura Braun ordered from Amazon and paid by credit card an "Amazon Brand-Solimo 91% Isopropyl Alcohol" container (pre-fuel-filled) advertised together and as a companion product fuel supply to the XIOYIG Tabletop Fire Pit. The Amazon order number was 114-3798735-6396243.

12. Amazon marketed and advertised the XIOYIG Tabletop Fire Pit and Amazon Brand-Solimo 91% Isopropyl Alcohol container as companion products which Amazon recommended to be purchased together. Both products were purchased together on December 18, 2022, based on the e-commerce website recommendation.

13. This "Amazon Brand-Solimo 91% Isopropyl Alcohol" container consumer product was shipped on December 21, 2022, and delivered by Amazon to the Braun family address at 6142 Llanfair Drive, Columbia, Howard County, Maryland 21044, on December 21, 2022.

14. Both the Amazon Brand-Solimo 91% Isopropyl Alcohol container and the companion XIOYIG Tabletop Fire Pit were sent to Plaintiffs through a program called "Fulfilled by Amazon." Under this program, the product originates from Amazon's warehouse in a location in Maryland where the products are held prior to shipment and then sent directly to customers by Amazon.

4

15.    On September 9, 2023, JLB (DOB 02/23/2010) was adding the Amazon Brand-Solimo 91% Isopropyl Alcohol container fuel to the XIOYIG Tabletop Fire Pit reservoir which resulted in a phenomena known as "flame jetting"[1] where unbeknown to the Plaintiffs or the minor children the Amazon Brand-Solimo 91% Isopropyl Alcohol container itself exploded like a bomb during the transfer of fuel to the fire pit because the flammable liquid from the container, poured in the presence of a flame or other ignition source (the Fire Pit), produced flammable fuel vapors that entered the container, causing the fuel container to ignite and explode.

16. This resulted in severe burns to both JLB (DOB 2/23/2010) who was holding the container as well as to his younger brother JGB (DOB 08/15/2012) who was sitting nearby.  Neither the Plaintiffs nor the minor children were aware of the potential for jet flaming. This phenomena would have been avoided had the container simply had a well-known, widely-utilized flame mitigation device (FMD) such as a flame arrestor.[2]

17.    Defendant Amazon was aware of the danger of flame jetting before the sale of the products and mechanisms to prevent the phenomenon but failed to take any steps to warn Plaintiffs or other consumers through labeling, warnings, or instructions as to the

---

[1] Flame jetting is defined as a phenomenon where an external ignition source causes a sudden ignition within a liquid container that directionally propels burning vapor and liquid from the mouth of the container.

[2] A flame mitigation device (FMD) is a device or feature attached to, installed in, or otherwise integral to, a container that is expected to <u>inhibit the propagation of an external flame into the container</u>.  A <u>flame arrestor</u> is a type of FMD that prevents the propagation of flame through quenching, or removal of heat from the flame.  Flame arrestors operate by removing heat from the flame as it attempts to travel back through the narrow passage openings by which the fuel exits the container and prevents the flammable vapors and contents of the container from being ignited and exploding.  Other examples of FMDs include, but are not limited to gas cans, expanded metal mesh, screens, bladders, pinhole restrictors, and pumps.

danger despite knowledge of injury and death to consumers caused by flame jetting for many years prior to the sale of the products that are the subject of this case.

18.  Amazon had actual knowledge and was aware or should have been aware of the unreasonable danger of fire pits and fuel containers to consumers, **particularly when used with containers without flame mitigation devices**.  Amazon was also aware or should have been aware of the danger of flame jetting that could occur with the use of the Amazon Brand-Solimo 91% Isopropyl Alcohol container in particular.  Furthermore, Amazon was aware or should have been aware of the important role of flame arrestors in pre-filled liquid fuel containers to prevent flame jetting well before September 9, 2023.

19.  The operating and safety principle of flame arrestors was first discovered in 1815 by British chemist and inventor Sir Humphry Davy to prevent flammable vapors in coal mines from contacting the candles in miners' lamps and preventing a catastrophic explosion.  Specifications for the performance of flame arrestors or flame mitigation devices had been studied and reported well before the injury in this case on September 9, 2023, and had resulted in an industry wide standards for Pre-Filled Portable Fuel Containers.  For example:

- In May of 2007, the Consumer Product Safety Commission (CPSC) and the Portable Fuel Container industry formed the American Society for Testing and Materials ASTM 15.10 Task Force Group on Flame Arresters for Gasoline Containers.  The meeting log stated, "One possible solution to reduce the likelihood of combustion within the gasoline container is a flame arrestor installed on the openings to the gasoline container."  The intent of the task force was to develop an industry voluntary standard for pre-filled and fillable liquid-fuel

containers to develop an effective flame mitigation device to prevent vapors from causing fire and explosion.

- On December 4, 2013, NBC News aired a major story warning about fires from gasoline containers without flame mitigation devices (FMD).  The CPSC came out in support of FMD's in portable fuel containers.  The next day, December 5, the CPSC called for manufacturers to add flame arresters to plastic gas cans to help prevent gas vapors from triggering explosions that can severely burn those handling the containers. "CPSC believes," the commission said in a statement, "that this technology . . . should be included in gasoline containers."

- As of December of 2016, the CPSC reported that they were aware of 115 explosion incidents involving portable fireplaces, fire pits and flammable liquid fuels.  Those incidents resulted in 126 injuries and 3 deaths from flame jetting.  The CPSC Memoranda stated, "Flame jetting can be mitigated by an effective flame arrestor or other effective flame mitigation device (FMD)."

- On April 17, 2018, the American Chemical Society produced a public video illustrating the effects of flame jetting on humans. https://www.acs.org/pressroom/reactions/library/small-bottle-huge-fireball-how-flame-jetting-works.html.

- In February of 2019, the ASTM published a standard for portable fire pits. The ASTM F3363-19 voluntary specification stated:

  > 5.2.2.5 When pouring flammable liquids from closed necked containers, use flame mitigation devices to reduce the risk of flame jetting.

  > 6.1.1  Each device must contain the label in Fig. 2.



FIG. 2 Warning Label

- On September 4, 2019, Ontario's Fire Marshal issued a Public Safety Message alerted Ontarians to the significant fire safety risks associated with ethanol-fueled appliances, commonly known as tabletop fire features or pots.  This warning was accompanied by graphic videos of flame jetting and a warning that fuel vapors are ignited when refueling these appliances that are not fully extinguished, and a flame is not readily visible.[3]

- The Portable Fuel Container Safety Act of 2020, signed into law by President Biden, required the CPSC to either develop a final regulation for flame mitigation devices in portable fuel containers or adopt a voluntary rule requiring the placement of a flame mitigation device on both pre-filled and refillable containers of liquid fuels.

- In September 2020, ASTM F3429-20 recommended flame mitigation devices for disposable, pre-filled liquid containers such as the Amazon Brand-Solimo 91% Isopropyl Alcohol container in this case.  This standard, while voluntary, reflected a wide consensus of knowledge as to the problem of flame jetting and the need for prevention through flame arrestors of which Amazon was aware.

- On April 6, 2021, Amazon published their required Safety Data Sheet for Amazon Brand-Solimo 91% Isopropyl Alcohol.  Amazon recommended and often bundled this product with their XIOYIG fire pit on the fire pit product promotion page.

---

[3] https://www.facebook.com/watch/?v=2951147074900962

Amazon promoted all 70% and 91% isopropyl alcohol as fuel for fire pits.  The Safety Data Sheet stated:

Signal word:  Danger

Hazard Statements:   Highly flammable liquid and vapor

Precautionary Statements:
Keep away from heat, sparks, open flame and hot surfaces.
Use explosion-proof electrical, ventilating and lighting equipment.

Specific hazards during firefighting:
Flash back possible over considerable distance
Vapors may form explosive mixtures with air.

Flash point:  57° F / 14° C

- On May 21, 2021, CPSC distributed to the public a "Fire Jetting Video Demonstration."  (https://x.com/USCPSC/status/1392483843115003910)

- On May 11, 2022, seven months before shipping the Amazon Brand Solimo 91% Isopropyl Alcohol container to the Braun family, the CPSC recommended that the Commission adopt ATSM F3429-20 under the Consumer Product Safety Act as permitted under the Portable Fuel Container Safety Act passed by Congress in 2020.   Regarding "Voluntary Standards Evaluation Under the Portable Fuel Container Safety Act of 2020," on May 11, 2022, a public memorandum published by CPSC warned of:

The injury potential associated with flame jetting is severe burns and possible death.

Flame jetting typically injures people away from the person holding the container, while the container rupturing typically injures the person holding the container.

Burning liquid from flame jetting generally travels further from the container than when the container ruptures.

The CPSC staff recommended that the Commission determine that the Voluntary Standard for Pre-Filled Portable Fuel Containers, the ASTM F3429-20 meets the requirements of the Portable Fuel Container Safety Act.

- On May 21, 2022, Colsen, the manufacturer of a competing and similar fire pit, revised their instructions provided to consumers inside the packaging of their fire pit, which was **also sold by Defendant Amazon**.  It now stated:

  Warnings

  - Remember fire pit fuel is highly flammable and extremely dangerous
  - Use 70% or 91% isopropyl alcohol as fuel.
  - Never refill, move or touch the fire pit while burning or when it is still hot.

  User Instructions

  - Always use specialized fuels with flame arrestors
  - Flame arrestors are highly effective in preventing flame jetting
  - Never leave children unattended in the area where the fire pit is being used.

- Thus, Amazon sold Colsen fire pits which included in the instructions "Flame arrestors are highly effective in preventing flame jetting" at the same time Amazon sold the subject Amazon Brand-Solimo 91% Isopropyl Alcohol" container which did not include any instruction or warning concerning using any ethanol based fire pit fuel without a flame arrestor (or some other flame mitigation device) critical to protect consumers from flame jetting, exploding containers, and catastrophic burns.  By selling ethanol based fire pit fuels with mesh flame arrestor (Firesol and Roundfire) prior to and at the same time Amazon sold the Amazon Brand-Solimo

10

91% Isopropyl Alcohol" container specifically as a fuel for fire pits, Amazon clearly understood the importance of flame mitigation devices in these products.

- On October 6, 2022, Amazon, on their website, began sales of Firesol High Purity Ethanol Fireplace Fuel [denatured alcohol]. The Amazon product promotion page states

> SAFETY FIRST BOTTLE
> The Patented flashback arrestor to stop flames jumping into the bottle.

- As early as November 9, 2022, Amazon sold Roundfire Bioethanol table-top fire pit fuel with a mesh screen ("FLASHBACK ARRESTOR" Fitted to Every Bottle).

- Two months after Amazon began to sell the Firesol alcohol for use in fire pits, on December 18, 2022, Laura Braun ordered the Amazon Brand-Solimo 91% Isopropyl Alcohol" container (shipped December 21) and the XIOYIG fire pit (shipped December 19) as promoted on the Amazon website product promotion page. The Amazon website for the subject fire pit simply stated:

> ETHANOL FIRE PIT EASY TO USE:  Simply add 70% or 91% isopropyl alcohol as fuel to burn, then use an extended lighter or a long match to ignite.

- The Amazon product page included pictures of the fire pit being used by children to toast marshmallows.

 

11

- The label on the Amazon Brand-Solimo 91% Isopropyl Alcohol" container as promoted and advertised for use as fireplace fuel did not comply with the regulations of the Federal Hazardous Substances Act [15 USC 1261(p)] nor did it comply with the previously published Standard Specification for Portable Fuel Containers, the industry standard published in September of 2020 under ASTM F3429-20.

- On January 30, 2023, just one month after Laura Braun purchased the Amazon Brand-Solimo 91% Isopropyl Alcohol" container specifically intended as fuel for the XIOYIG fire pit, the CPSC "determined" that ATSM F3429-20 was established as a **_mandatory standard effective July 12, 2023, nearly 2 months before the burn injuries to the Braun children_**.  This standard required a FMD in fuel containers like the one at issue here.

- Pursuant to the CPSC Recall Handbook (2012), where a manufacturer, distributor or retailer possesses the names and addresses of consumers who purchased the substantially hazardous product, the highest and best notification is by direct first-class mail.  By July 12, 2023, the effective date of such mandatory standard, Amazon clearly possessed Laura Braun's name and address.  But Amazon waited until December 25, 2024, a full 18 months later, to mail the notice of the danger to purchases such as the Brauns.  This notice was over fifteen (15) months after the minor Plaintiffs were injured.

20.  Amazon was therefore on actual notice of this danger from a combination of sources, or willfully refused to know of the unreasonably dangerous nature of the XIOYIG Tabletop Fire Pit and the Amazon Brand-Solimo 91% Isopropyl Alcohol container before

12

they were purchased by Plaintiffs and before Plaintiffs were injured by it. The unsafe condition including any defects that made the XIOYIG Tabletop Fire Pit and the Amazon Brand-Solimo 91% Isopropyl Alcohol container prone to dangerous flame jetting and ignited fuel vapors coupled with the absence of a flame arrestor was known to Defendant which was armed with this knowledge when these products left the control of the Defendant, and further was one that a basic investigation by Amazon would have easily and quickly revealed.

21. Despite this, Amazon did nothing to mitigate this danger, thus consciously and deliberately disregarding the potential danger to consumers including, but not limited to, failing to: 1) properly examine, test and evaluate the XIOYIG Tabletop Fire Pit and the Amazon Brand-Solimo 91% Isopropyl Alcohol and it's container before listing these products on Amazons website; 2) recall, remove, or bar the XIOYIG Tabletop Fire Pit and the Amazon Brand-Solimo 91% Isopropyl Alcohol and container from the website, and/or; 3) warn or otherwise timely notify Plaintiffs about the unreasonably dangerous condition of both the XIOYIG Tabletop Fire Pit and the Amazon Brand-Solimo 91% Isopropyl Alcohol container.

22. Neither the Plaintiff Parents nor the minor Plaintiffs were aware of the danger of vapor combustion, flame jetting, nor the danger of an absent flame arrestor. Defendant Amazon was aware of these dangers but failed to take steps to correct the danger or warn Plaintiffs and other consumers through their website with either labeling, warnings or instructions, as to the danger, despite knowledge of injury and death to consumers caused by flame jetting and the absence of flame arrestors for many years prior to the sale of the above products to the Plaintiffs. The Amazon Brand-Solimo 91% Isopropyl

Alcohol product and the container sold to Plaintiffs lacked such a flame arrestor device despite the technology for such device being well known to the Defendant for years prior to this incident.  If the flame arrestor had been present on the product, the flame jetting and resulting explosion would not have occurred.

23.   Prior to Plaintiff's injuries, Amazon heavily portrayed itself as a safe and trustworthy company.  Plaintiffs believed Amazon would not have allowed dangerous products like the XIOYIG Tabletop Fire Pit and the Amazon Brand-Solimo 91% Isopropyl Alcohol and container to be available for sale on its website and marketed for use by children, especially without adequate warnings of the danger outlined above.  Further, Plaintiffs believe that when Amazon learned or should have learned these products were dangerous, Amazon would conduct a prompt and thorough investigation of that product and, when appropriate, notify purchasers of that product's danger and/or completely remove the product from its e-commerce platform.  As a result, Plaintiffs purchased these products on Amazon's website.

24.   Amazon voluntarily undertook to provide a number of safety related services for the benefit of individuals who purchase and use products purchased through Amazon's website.  Amazon's purported goal in offering these services has been to fully assure the safety and reliability of not just the products sold on Amazon's website but also of the sellers and providers of these products.  Amazon's affirmative representations of reliability and its sales enhancing services were in place long before Plaintiffs purchased these products and these affirmative representations distinguished Amazon from other online marketplaces.  Amazon's actions established that Amazon undertook to be a leader in e-commerce sales of products and was in fact at all times relevant hereto

14

the largest and most commercially successful online e-commerce sales and market organization in the world.

25.  Amazon provided extensive details on its voluntary undertaking in a post it made on its own website in 2019 stating[4]

> *Amazon strives to be Earth's most customer-centric company, where people can find and discover the widest possible selection of safe and authentic goods, and we work hard to earn and maintain your trust. In 2018 alone, we invested over $400 million to protect our store and our customers and built robust programs to ensure products offered are safe, compliant, and authentic. Amazon offers customers hundreds of millions of items, and we have developed, and continuously refine and improve, our tools that prevent suspicious, unsafe, or non-compliant products from being listed in our store.*
>
> *Our proactive measures begin when a seller attempts to open an account.  Our new seller account vetting includes a number of verifications and uses proprietary machine learning technology that stops bad actors before they can register or list a single product in our store. All products offered in our stores must comply with applicable laws and regulations, and our own policies. For example, we require toys to be tested to relevant safety standards set by the Consumer Product Safety Commission. We have a dedicated global team of compliance specialists that review submitted safety documentation, and we have additional qualification requirements that sellers must meet to offer products. In 2018, our teams and technologies proactively blocked more than three billion suspect listings for various forms of abuse, including non-compliance, before they were published to our store.*
>
> *Once a product is available in our store, we continuously scan our product listings and updates to find products that might present a concern. Every few minutes, our tools review the hundreds of millions of products, scan the more than five billion attempted daily changes to product detail pages, and analyze the tens of millions of customer reviews that are submitted weekly for signs of a concern and investigate accordingly. Our tools use natural language processing and machine learning, which means new information is fed into our tools daily so they can learn and constantly get better at proactively blocking suspicious products.*

---

[4]https://www.aboutamazon.com/news/company-news/product-safety-and-compliance-in-our-store

*In addition, we provide a number of ways for regulatory agencies, industry organizations, brands, customers, and our customer service teams to report safety issues. When we receive these reports, we move quickly to protect customers, remove unsafe products from our store, and investigate. For example, if a customer reports a concern with a product, a customer service associate can instantly trigger an investigation. Additionally, because of our direct relationships with customers, we are able to trace and directly notify customers who purchased a particular product online and alert them to a potential safety issue—our systems are far more effective than other online and offline retailers and customers can feel confident they'll have the information they need. […] We invest significant resources to protect our customers and have built robust programs designed to ensure products offered for sale in our store are safe and compliant. We want customers to shop with confidence and if ever a customer has a concern, they can contact our customer service team, and we will investigate.*

26.  In addition, Amazon's Help and Customer Service web page explains:



27.  Other related services that Amazon offers for the benefit of users like the Plaintiffs include: approval of all FBA (Fulfillment by Amazon) programs to sell products on Amazon; ASINs (Amazon Standard Identification Number) which is a unique 10-character alphanumeric code that identifies products on Amazon; provision of 24/7

customer service; receiving and processing all FBA product returns (during which time Amazon inspects the FBA product and determines whether the product can be resold); and categorizing FBA products with the help of both employees and computers/robots, labeling FBA products, and moving them through the distribution process.[5]

28. The contracts between Amazon and its merchants state that Amazon: (a) has the authority to format the product's listing on its online marketplace, which includes how a listing is displayed to consumers; (b) may reject products that Amazon determines are illegal, sexually explicit, defamatory, or obscene; and (c) will require merchants to communicate with their customers exclusively through Amazon's platform, which enables customers to provide user comment reviews on a product's web page listing.

29. Amazon has an established history of monitoring the safety of the products on its website and taking unilateral action to remove dangerous products from the available listings and to warn consumers who purchased such products of the potential hazards they present. This history includes, for example, Amazon's recall on June 30, 2021, of more than 4,900 units of children's sleep wear garments sold on Amazon's site by Chinese companies located in the city of Shenzhen[6] which did not meet federal flammability standards. At all relevant times, Amazon maintained the same kind of control

---

[5] This language comes directly from a Draft Administrative Complaint published on June 14, 2021, by the U.S. Consumer Product Safety Commission and publicized online in a CNN article dated July 15, 2021:
https://www.cnn.com/2021/07/15/tech/cpsc-sues-amazon/index.html
https://cpsc.gov/s3fs-public/pdfs/recall/lawsuits/abc/001-In-re-Amazon-com-Inc.pdf?TvLLxHy1UMfiz3BpfXaKjQy1ibQbYAiU
https://www.cpsc.gov/Recalls/2021/childrens-nightgowns-sold-exclusively-on-amazon-com-recalled-due-to violation-of-0

over the products in this case but took no action to initiate needed recalls or warnings to consumers.

30. At all times relevant hereto, Amazon represented to the consumers that Defendant actively undertook prevention of unsafe product sales on Defendant's online store through voluntary internal policies and processes to ensure product safety, including seller vetting, product testing, monitoring legal and regulatory compliance, blocking unsafe listings, acting expediently to address reports of product safety issues, investigating potential safety issues, notifying customers of potential safety issues, and using specialist employees and proprietary technological tools to monitor product listings for potential safety concerns.

31. At the time of Amazon's design, manufacture, distribution, marketing, sale, possession, warehousing, fulfillment of sale, and/or delivery of the subject XIOYIG Tabletop Fire Pit and Amazon Brand-Solimo 91% Isopropyl Alcohol container, they were defective, in an unreasonably dangerous condition in that the products were misbranded, improperly labeled, absent necessary warnings, and missing a needed flame arrestor device while being marketed and sold for use by children as a toy.

32. At the time Amazon designed, manufactured, produced, marketed, distributed, possessed, warehoused, fulfilled the sale of, delivered and/or sold the subject XIOYIG Tabletop Fire Pit and Amazon Brand-Solimo 91% Isopropyl Alcohol container, Amazon had actual knowledge of the defective and unreasonably dangerous condition of the products when it left Amazon's control and consciously or deliberately disregarded the potential harm to consumers.

33.  Amazon profited and otherwise benefitted from the sale, fulfillment of sale, and/or distribution of the aforesaid products.

34.  At all pertinent times, Amazon had voluntarily undertaken to thoroughly vet the safety and reliability of: 1) all sellers who were listing products on Amazons website, and; 2) all products being sold on Amazon's website.  Amazon should have voluntarily undertaken to protect Plaintiffs by recalling, removing, or barring XIOYIG Tabletop Fire Pit and Amazon Brand-Solimo 91% Isopropyl Alcohol and containers from Amazon's website, or by warning or otherwise notifying Plaintiffs about the unreasonably dangerous nature of the aforesaid products.  Amazon had also voluntarily undertaken to thoroughly investigate dangerous products on its website, and to protect individuals who used products purchased through Amazon by notifying them of unsafe products.  These services were undertaken by Amazon for the benefit of all individuals who used products purchased through Amazon's website, including Plaintiffs.

35.  As a direct and proximate result of the defective and unreasonably dangerous condition of the product as aforesaid, the minor Plaintiffs suffered severe burns and injury. Both have suffered and will continue in the future to suffer in the future, pain and suffering, mental anguish, disability, and disfigurement.  The Parents have incurred and have become liable for large sums of money in doctor, hospital, medical and related expenses, and will become liable for additional sums in the future during the minority of both JLB and JGB.  Plaintiffs Justin L. Braun and Laura Braun, both Individually and as Parents and Next Friends of JLB and JGB sustained and will sustain both pre-majority and post-majority economic expenses resulting from the need for: 1) medical care; (2) procedures/ hospitalizations/surgeries; (3) evaluations; (4) adjunct therapies such as physical,

20

occupational and related therapies; (5) diagnostic testing; (6) medications; (7) supplies; (8) equipment; (9) orthotics/prosthetics; (10) wheelchairs; (11) aids for independent living; (12) home care; (13) institutional out-of-home facility care; (14) case management; (15) transportation and specially equipped vehicles; (16) transportation; (17) adaptive home furnishing and accessories; (18) counseling; (19) respite care; (20) home modifications; and (21) medical care and procedures for potential complications; (22) as well as other needed care.  In addition, JLB and JGB will suffer the above economic losses after reaching their majority as well as a loss of income and income producing ability during their work life.

### COUNT ONE
### Strict Liability State Law Action based on violation of Federal Hazardous Substances Act – Misbranded Hazardous Substances – Strict Liability Failure to Warn and Defective Design

36.  Plaintiffs hereby incorporate all previous paragraphs as if restated herein.

37.  Under the Fourth Circuit Court's ruling in *Moss v. Parks Corporation*, 985 F. 2d 736 (1993), a failure to warn claim in State Court is preempted by the Hazardous Substances Act and in particular Misbranded Hazardous Substances under 15 USC §1261(p).  Thus, in Maryland, State law actions for misbranded hazardous substances are pre-empted by federal law insofar as the wording of certain warnings are concerned as set forth in the 2011 amendment to the Federal Hazardous Substance Act (hereinafter "FSHA").  However, violations of the FHSA are permissible as evidence that the product is unsafe.

38.   On its promotional page to sell the XIOYIG fire pit, Amazon specifically promotes the use of the Amazon Brand-Solimo 91% Isopropyl Alcohol as appropriate fuel

21

for the fire pit.  On some of its product promotion pages which seem to change which products were bundled together with the fire pit, the Amazon Brand-Solimo 91% Isopropyl Alcohol container is actually bundled together with the fire pit for sale.

39.  Under 15 USC §1261(f)(1) of the Federal Hazardous Substances Act (FHSA), the term Hazardous Substance means:

(f) The term "hazardous substance" means:

1. (A) Any substance or mixture of substances which (i) is toxic, (ii) is corrosive, (iii) is an irritant, (iv) is a strong sensitizer, (v) is flammable or combustible, or (vi) generates pressure through decomposition, heat, or other means, if such substance or mixture of substances may cause substantial personal injury or substantial illness during or as a proximate result of any customary or reasonably foreseeable handling or use, including reasonably foreseeable ingestion by children.

40.  Under 15 USC §1261(p) the Federal Hazardous Substances Act (FHSA) defines a Misbranded Hazardous Substance as:

(p) The term "misbranded hazardous substance" means a hazardous substance (including a toy, or other article intended for use by children, which is a hazardous substance, or which bears or contains a hazardous substance in such manner as to be susceptible of access by a child to whom such toy or other article is entrusted) intended, or packaged in a form suitable, for use in the household or by children, if the packaging or labeling of such substance is in violation of an applicable regulation issued pursuant to section 3 or 4 of the Poison Prevention Packaging Act of 1970 or if such substance, except as otherwise provided by or pursuant to section 3, fails to bear a label—
(1) which states conspicuously
  (A) the name and place of business of the manufacturer, packer, distributor or seller;
  (B) the common or usual name or the chemical name (if there be no common or usual name) of the hazardous substance or of each component which contributes substantially to its hazard, unless the Commission by regulation permits or requires the use of a recognized generic name;
  (C) the signal word "DANGER" on substances which are extremely flammable, corrosive, or highly toxic;
  (D) the signal word "WARNING" or "CAUTION" on all other hazardous substances;

22

(E) an affirmative statement of the principal hazard or hazards, such as "Flammable," "Combustible," "Vapor Harmful," "Causes Burns," "Absorbed Through Skin," or similar wording descriptive of the hazard;

(F) precautionary measures describing the action to be followed or avoided, except when modified by regulation of the Commission pursuant to section 3;

(G) instruction, when necessary or appropriate, for first-aid treatment;

(H) the word poison for any hazardous substance which is defined as "highly toxic" by subsection (h);

(I) instructions for handling and storage of packages which require special care in handling or storage; and

(J) the statement (i) "Keep out of the reach of children" or its practical equivalent, or, (ii) if the article is intended for use by children and is not a banned hazardous substance, adequate directions for the protection of children from the hazard, and

(2) on which any statements required under subparagraph (1) of this paragraph are located prominently and are in the English language in conspicuous and legible type in contrast by typography, layout, or color with other printed matter on the label.

41.    The Amazon Brand-Solimo 91% Isopropyl Alcohol container is both a "hazardous substance" and a "misbranded hazardous substance."

42.    The label on the Amazon Brand-Solimo 91% Isopropyl Alcohol container states the following:

  

43.    The Amazon Brand-Solimo 91% Isopropyl Alcohol container Safety Data Sheet (SDS) widely available on the internet and other places, describes the hazards, risks and dangers of the Amazon Brand-Solimo 91% Isopropyl Alcohol container as follows:

Danger

Highly flammable liquid and vapor

Flash back possible over considerable distance

Vapors may form explosive mixture with air

44.    These admitted risks and dangers as to the Amazon Brand-Solimo 91% Isopropyl Alcohol container make this product unfit for use as fuel for a fire pit, particularly for use by children, as clearly promoted by Amazon.  Indeed, the labeling appears to be consistent with the Food, Drug and Cosmetic Act without regard to its promoted use as fire pit fuel, their own SDS and the FHSA requirements.

45.    For the purposes of its promoted use as fire pit fuel, the label not only fails to comply with the requirements of the FHSA, but it is dangerously misleading to consumers.  It is improper and misleading to label the Amazon Brand-Solimo 91% Isopropyl Alcohol container "Keep away from flames and hot surfaces" when promoting it to be used in a fire pit.

46.    It is also improper and misleading to state the admonition on the Amazon Brand-Solimo 91% Isopropyl Alcohol container "Keep away from children" when on the Amazon promotion page the promoted fuel for the XIOYIG fire pit depicts children using the fire pit and dancing around it.  This renders the product as a Misbranded Hazardous Substance.

24

47.    Under 15 USC §1263, Prohibited Acts, the following acts and the causing thereof are prohibited: (a)  The introduction or delivery for introduction into interstate commerce of any Misbranded Hazardous Substance or Banned Hazardous Substance.

48.    It is and was a violation of federal law to promote and introduce into commerce the Amazon Brand-Solimo 91% Isopropyl Alcohol container for use as a fuel for fire pits.

49.    The Amazon Brand-Solimo 91% Isopropyl Alcohol container was: (1) Defective when it left the control of Amazon, the seller; (2) Unreasonably dangerous to the user; (3) The defect was the cause of the burn injuries to the Braun children; (4) The product reached the Plaintiffs without substantial change in its condition.

50.    Plaintiffs hereby bring a State law action in part based on violation of FHSA requirements for an unreasonably dangerous product, defective as to its intended and advertised use as well as being a mislabeled/branded product under FHSA.

51.    Defendant Amazon's conduct was characterized by "evil motive, intent to injure, ill will and fraud" in that (1) Amazon actually knew of the defective and dangerous condition of the product at the time it left this Defendant's possession and control; and (2) armed with this actual knowledge and/or willful refusal to know, Amazon consciously and deliberately disregarded the potential harm to these consumer Plaintiffs.

WHEREFORE, Plaintiffs Justin and Laura Braun, Individually and as Parents and Next Friends of JLB and JGB, demand judgment against Defendant Amazon for compensatory damages in excess of Seventy-Five Thousand Dollars ($75,000.00) jurisdictional limit and for punitive damages as assessed by the jury, plus interest and costs.

25

## COUNT TWO
## Federal Law - Prohibited Act Under the Consumer Product Safety Act [15 USC 2064 and 2068] and CPSC regulations [16 CFR 1115]

52.  Plaintiffs hereby incorporate all previous paragraphs as if restated herein.

53.  Section 15 USC 2064 "Substantial Product Hazards" states:

> (a)    For purposes of this section, the term ''substantial product hazard '' means—

> (2)    a product defect which (because of the pattern of defect, the number of defective products distributed in commerce, the severity of the risk, or otherwise) creates a substantial risk of injury to the public.

> (b)    Every manufacturer of a consumer product . . . distributed in commerce, and every distributor and retailer of such product, who obtains information which reasonably supports the conclusion that such product--

> (1)    fails to comply with an applicable consumer product safety rule or with a voluntary consumer product safety standard upon which the Commission has relied under section 9 [15 U.S.C. § 2058];
> (2)    fails to comply with any other rule, regulation, standard, or ban under this Act or any other Act enforced by the Commission;
> (3)    contains a defect which could create a substantial product hazard described in (a)(2); or
> (4)    creates an unreasonable risk of serious injury or death,

> shall immediately inform the Commission of such failure to comply, of such defect, or of such risk, unless such manufacturer, distributor, or retailer has actual knowledge that the Commission has been adequately informed of such defect, failure to comply, or such risk . . .

54.  The Amazon Brand-Solimo 91% Isopropyl Alcohol container qualifies as having a "defect" pursuant to 15 U.S.C.§1115.4 because "the design presents a substantial risk of injury to the public."

55.  The Amazon Brand-Solimo 91% Isopropyl Alcohol container qualifies as having an "unreasonable risk of serious injury or death" pursuant to 15 U.S.C. §1115.6. Because of the "unreasonable risk of serious injury or death," Amazon was required to

report this product to the Consumer Product Safety Commission (CPSA).  Amazon failed to meet this obligation.

56.  Thus, Defendant Amazon, pursuant to the Consumer Product Safety Act (15 USC § 2064 and 2068) had a duty to report to the Consumer Product Safety Commission (hereinafter "CPSC") a "substantial product hazard" wherein any product that creates a substantial risk of injury to the public shall immediately provide a "full report" and inform the Commission of the defect.  Following such report, Amazon was required to obtain approval by the CPSC of information to inform consumers about the defect.

57.  Likewise, Defendant Amazon failed to promulgate any rules or regulations for either voluntary or mandatory standards regarding this product as required by 15 U.S.C. §1115.8.

58.  Likewise, the Defendant had "imputed knowledge" pursuant to CPSA §1115.11 in that "a reasonable person acting in the circumstances in which the firm finds itself . . . would have known if it had exercised due care to ascertain the truth of complaints or other representations. This includes the knowledge a firm would have if it conducted a reasonably expeditious investigation in order to evaluate the reportability of a death or grievous bodily injury or other information."

59.  Likewise, the CPSC Memorandum dated May 11, 2022 re: Voluntary Standards Evaluation Under the Portable Fuel Container Safety Act of 2020 recommended a "flame mitigation device."  Despite Defendant Amazon being aware of the potential danger for a flame jetting and container rupture as a result of action undertaken by the CPSC to promulgate standards indicating the need for a "flame mitigation device," no such action was undertaken by this Defendant.

60. On January 30, 2023, just one month after Laura Braun purchased the Amazon Brand-Solimo 91% Isopropyl Alcohol" container specifically intended as fuel for the XIOYIG fire pit, the CPSC "determined" that ATSM F3429-20 was established as a ***mandatory standard effective July 12, 2023, nearly 2 months before the burn injuries to the Braun children***. This standard required a FMD in fuel containers like the one at issue here. Yet, Amazon waited until December 25, 2024, a full 18 months later, to mail the notice of the danger to purchases such as the Brauns. This notice was over fifteen (15) months after the minor Plaintiffs were injured. Yet, no steps were taken to mitigate this danger or warn consumers like the Plaintiffs.

61. In the instant case, no reporting of the danger of flame jetting or lack of arrestor in the portable fuel container was undertaken by Amazon despite ample evidence outlined above that such dangerous defects were present. This failure was a knowing and/or willful violation of the CPSC safety rules. Had such information been provided to the Plaintiffs following their purchase of both the Amazon Brand-Solimo 91% Isopropyl Alcohol container as well as the XIOYIG Tabletop Fire Pit, they would not have used the products and avoided the injury to their children.

62. Defendant Amazon's conduct was characterized by "evil motive, intent to injure, ill will and fraud" in that (1) Amazon actually knew of the defective and dangerous condition of the product at the time it left this Defendant's possession and control; and (2) armed with this actual knowledge and/or willful refusal to know, Amazon consciously and deliberately disregarded the potential harm to these consumer Plaintiffs.

WHEREFORE, Plaintiffs Justin L and Laura Braun, individually and as Parents and Next Friends of JLB and JGB, demand judgment against Amazon for compensatory

damages in excess of Seventy-Five Thousand Dollars ($75,000.00) jurisdictional limit and for punitive damages as assessed by the jury, plus interest and costs.

## COUNT THREE
### State Law – Strict Liability: Defective Design, Manufacturing Defect, Failure to Warn and/or Recall

63.  Plaintiffs hereby incorporate all previous paragraphs as if restated herein.

64.   The Amazon Brand-Solimo 91% Isopropyl Alcohol container product was placed in the stream of commerce and sold by Defendant Amazon to the Plaintiffs: (a) in a defective condition not contemplated by the Plaintiff consumers when it left possession of and was sold by the seller Amazon to the Plaintiffs; (b) unreasonably dangerous to the consumer for reasons unknown to the Plaintiffs; (c) was expected to and did reach the Plaintiffs without substantial change in condition; and (d) said defective and unreasonably dangerous conditions were the proximate cause of the minor Plaintiffs' injuries.

65.   Said defective and unreasonably dangerous condition was because the recommended way to fuel the fire pit included use of a fuel container which was both designed and manufactured without a necessary flame arrestor to avoid the dangerous flame jetting and which if present would have avoided the flame jetting injury to the Plaintiffs. Amazon knew of the potential for flame jetting and the danger of the fuel container exploding like a bomb well before the sale of the products in this case.

66.  In addition, Defendant Amazon failed to include a warning necessary for the safe use of the products and failed to warn the Plaintiffs of the known danger of the unreasonably dangerous and defective condition of the products because:  (a) Amazon used explicit advertising and marketing of the product on its website specifically showing young children using the product with no adult supervision; (b) Amazon failed to

adequately warn of the extreme danger of adding fuel using the Isopropyl fuel containers to the already lighted fire pit; (c) Amazon failed to adequately warn of the highly flammable nature of the isopropyl alcohol vapors and alcohol; (d) Amazon failed, prior to the injury to the Plaintiffs while conducting its own research, development and monitoring of the safety of its products, to require that the manufacturer of the isopropyl alcohol incorporate the flame arrestor on the fuel bottle being sold by Amazon which would have avoided the injury to the minor Plaintiffs; (e) Amazon failed to warn of the absence of a flame arrestor on the isopropyl alcohol fuel bottle which technology they were aware of well prior to the injuries to the Plaintiffs; (f) Amazon failed to warn of a safer alternative use of less flammable fuel sources that were available; (g) Amazon failed to warn of the potential for the lethal "flame jetting" that could result in adding fuel to an already lit fire pit with a fuel bottle not fitted with a flame arrestor; and (h) Amazon failed to advise consumers of a mandatory standard adopted on July 12, 2023, that specifically warned about the dangers of flame jetting and the need for a flame mitigation device such as a flame arrestor.

67. Plaintiff Parents relied on the advertising of the products that it was suitable for the use of their minor children. If the appropriate and adequate required warnings had been provided in the advertising or otherwise, the Plaintiff parents would not have purchased the product and would not have permitted the minor Plaintiffs to use the product which would have avoided the injuries to the minor Plaintiffs.

68. Defendant Amazon's conduct was characterized by "evil motive, intent to injure, ill will and fraud" in that (1) Amazon actually knew of the defective and dangerous condition of the product at the time it left this Defendant's possession and control; and (2)

30

armed with this actual knowledge and/or willful refusal to know, Amazon consciously and deliberately disregarded the potential harm to these consumer Plaintiffs.

WHEREFORE, Plaintiffs Justin L and Laura Braun, individually and as Parents and Next Friends of JLB and JGB, demand judgment against Amazon for compensatory damages in excess of Seventy-Five Thousand Dollars ($75,000.00) jurisdictional limit and for punitive damages as assessed by the jury, plus interest and costs.

## COUNT FOUR
### State Law – Negligence: Defective Design, Manufacturing Defect, Failure to Warn and/or Recall

69.  Plaintiffs hereby incorporate all previous paragraphs as if restated herein.

70.  Defendant Amazon had a duty to exercise reasonable care in the design, manufacture, testing, sale, labeling, distribution, and warnings, both before and after the sale, as well as the recall of the Amazon Brand-Solimo 91% Isopropyl Alcohol container that it placed into the stream of commerce, including a duty to assure that this product did not cause unreasonable or unnecessary risk of injury.

71.  Defendant Amazon was negligent in the design, manufacture, sale, testing, and/or distribution of the Amazon Brand-Solimo 91% Isopropyl Alcohol container in that it: (a) failed to use due care in designing, formulating, developing, testing, and manufacturing the product so as to avoid or warn against the risks to consumers who used this product; (b) placed this unsafe product into the stream of commerce; and (c) failed to discover or warn of the dangers associated with the use of this product despite having actual and/or constructive knowledge of such dangers.

72. Defendant Amazon knew or should have known that Plaintiff and other users could foreseeably suffer injuries as a result of Amazon's failure to exercise ordinary care.

31

73.    Defendant Amazon's conduct was characterized by "evil motive, intent to injure, ill will and fraud" in that (1) Amazon actually knew of the defective and dangerous condition of the product at the time it left this Defendant's possession and control; and (2) armed with this actual knowledge and/or willful refusal to know, Amazon consciously and deliberately disregarded the potential harm to these consumer Plaintiffs.

WHEREFORE, Plaintiffs Justin L and Laura Braun, individually and as Parents and Next Friends of JLB and JGB, demand judgment against Amazon for compensatory damages in excess of Seventy-Five Thousand Dollars ($75,000.00) jurisdictional limit and for punitive damages as assessed by the jury, plus interest and costs.

## COUNT FIVE
### State Law – Breach of Implied Warranty

74.    Plaintiffs hereby incorporate all previous paragraphs as if restated herein.

75.    Defendant Amazon is in the business of selling consumer products and did sell to the Plaintiffs through e-commerce the XIOYIG Tabletop Fire Pit and the companion Amazon Brand-Solimo 91% Isopropyl Alcohol container which were advertised and recommended by Amazon to be purchased and used together.

76.    These products were marketed as toys with photographs of young children using and surrounding the product.

77.    Plaintiffs viewed the advertising for these products and in reliance on this advertising purchased the XIOYIG Tabletop Fire Pit and the companion Amazon Brand-Solimo 91% Isopropyl Alcohol and container as Christmas presents for their two young sons.

78.    At the time of the purchase and delivery of the XIOYIG Tabletop Fire Pit and the companion Amazon Brand-Solimo 91% Isopropyl Alcohol container, Defendant

Amazon impliedly warranted to Plaintiffs that these products were fit for their particular purpose which Amazon had communicated through its advertising, i.e., that this product was safe for use by children as a table top fire pit for certain cooking such as roasting marshmallows. Amazon held itself out as possessing superior knowledge and skill in the use of such products through their words and photographs used in advertising these products. Plaintiffs relied on such superior knowledge and skill in their purchase and use of these products.

79. Because this product was unreasonably dangerous and not suited for its intended purpose as set forth above, the products did not conform to their implied fitness of merchantability and fitness for a particular purpose which was the direct and proximate cause of the injuries set forth above.

80. Defendant Amazon's conduct was characterized by "evil motive, intent to injure, ill will and fraud" in that (1) Amazon actually knew of the defective and dangerous condition of the product at the time it left this Defendant's possession and control; and (2) armed with this actual knowledge and/or willful refusal to know, Amazon consciously and deliberately disregarded the potential harm to these consumer Plaintiffs.

WHEREFORE, Plaintiffs Justin L and Laura Braun, individually and as Parents and Next Friends of JLB and JGB, demand judgment against Amazon for compensatory damages in excess of Seventy-Five Thousand Dollars ($75,000.00) jurisdictional limit and for punitive damages as assessed by the jury, plus interest and costs.

## COUNT SIX
### State Law – Breach of Express Warranty

81. Plaintiffs hereby incorporate all previous paragraphs as if restated herein.

82. In order to induce the purchase and/or use of the products, Amazon through its website and advertising expressly warranted to potential users that the XIOYIG Tabletop Fire Pit and the companion Amazon Brand-Solimo 91% Isopropyl Alcohol container were safely designed, tested and manufactured and safe for the uses for which they were designed and/or advertised to be used. Express warranties were contained in information on the product pages on Amazon's website.

83. Amazon breached said warranties in that the products were not safe to be used for the purposes for which it was manufactured and/or advertised.

84. Plaintiffs were injured as a result of detrimental reliance upon Defendant Amazon's express warranties.

85. Defendant Amazon's conduct was characterized by "evil motive, intent to injure, ill will and fraud" in that (1) Amazon actually knew of the defective and dangerous condition of the product at the time it left this Defendant's possession and control; and (2) armed with this actual knowledge and/or willful refusal to know, Amazon consciously and deliberately disregarded the potential harm to these consumer Plaintiffs.

WHEREFORE, Plaintiffs Justin L and Laura Braun, individually and as Parents and Next Friends of JLB and JGB, demand judgment against Amazon for compensatory damages in excess of Seventy-Five Thousand Dollars ($75,000.00) jurisdictional limit and for punitive damages as assessed by the jury, plus interest and costs.

## COUNT SEVEN
### Negligent Misrepresentation

86. Plaintiffs hereby incorporate all previous paragraphs as if restated herein.

87. Defendant Amazon, as the manufacturer and distributor of the Amazon Brand-Solimo 91% Isopropyl Alcohol, had a duty to disclose material facts as to the

34

unreasonable danger of the Amazon Brand-Solimo 91% Isopropyl Alcohol which they advertised and depicted as suitable for use, including by children, but which was mislabeled, lacked a FMD arrestor making it subject to dangerous flame jetting and therefore not suitable for use by any consumer. Indeed, Amazon negligently misrepresented the safety of design, testing and manufacture for the uses for which the product was designed and/or advertised to be used, knowing that the product had been tested and found to be unreasonably dangerous and defective with respect to the purpose for which it was sold. Amazon knew but did not disclose to Plaintiffs until after they were injured that the absence of a flame arrestor and danger of flame jetting had been specifically investigated and tested which precipitated warnings from the ATSM and CPSC about the danger of the absence of an FMD and the potential for flame jetting in products like the Amazon Brand-Solimo 91% Isopropyl Alcohol container. These warnings were indeed ultimately made mandatory in order to protect the public. All of this took place months before the injury to Plaintiffs

88. The aforementioned breach of Defendant Amazon's duty to disclose a material fact was negligent in that Amazon knew or should have known that any reasonable Plaintiff, including the unsophisticated consumer Plaintiffs here, had they known of the existence of these undisclosed material facts, would have acted in a different manner by not using the product that lacked a flame arrestor. Indeed, Defendant Amazon intended that its statements would be acted upon by consumers like the Plaintiffs in order to sell its product. Defendant Amazon knew that the Plaintiffs would probably rely on the statement, which, if erroneous, would cause loss or injury. Plaintiffs acted in justifiable reliance upon the concealment of the material facts by electing to use the product which

35

they otherwise would not have used. As a result of Defendant Amazon's misrepresentation, Plaintiffs were significantly injured by the flame jetting which otherwise would have been avoided.

WHEREFORE, Plaintiffs Justin L and Laura Braun, individually and as Parents and Next Friends of JLB and JGB, demand judgment against Amazon for compensatory damages in excess of Seventy-Five Thousand Dollars ($75,000.00) jurisdictional limit and for punitive damages as assessed by the jury, plus interest and costs.

## COUNT EIGHT
### Intentional Misrepresentation

89. Plaintiffs hereby incorporate all previous paragraphs as if restated herein.

90. Defendant Amazon, as the manufacturer and distributor of the Amazon Brand-Solimo 91% Isopropyl Alcohol had a duty to disclose material facts as to the unreasonable danger of the Amazon Brand-Solimo 91% Isopropyl Alcohol which it advertised and depicted as suitable for use, including by children, but which was mislabeled, lacked a FMD arrestor making it subject to dangerous flame jetting and therefore not suitable for use by any consumer. Indeed, Amazon misrepresented the safety of design, testing and manufacture for the uses for which the product was designed and/or advertised to be used, knowing that the product had been tested and found to be unreasonably dangerous and defective with respect to the purpose for which it was sold. Amazon knew but did not disclose to Plaintiffs until after they were injured that the absence of a flame arrestor and danger of flame jetting had been specifically investigated and tested which precipitated warnings from the ATSM and CPSC about the danger of the absence of an FMD and the potential for flame jetting in products like the Amazon Brand-Solimo 91% Isopropyl Alcohol container. These warnings were indeed ultimately made mandatory in order to

protect the public.  All of this took place months before the injury to Plaintiffs.  This breach of Defendant Amazon's duty to disclose a material fact was made with the intent to deceive in that Amazon knew or should have known that any reasonable Plaintiff, including the unsophisticated consumer Plaintiffs here, had they known of the existence of these undisclosed material facts would have acted in a different manner by not using the product that lacked a flame arrestor.  Plaintiffs acted in justifiable reliance upon the concealment of the material facts by electing to use the product which they otherwise would not have used; and as a result were injured by the flame jetting which otherwise would have been avoided.

91.   By advertising and promoting the XIOYIG Tabletop Fire Pit and Amazon Brand-Solimo 91% Isopropyl Alcohol container as companion products which Amazon recommended to be purchased together, and promoted and sold as safe for use together, even with children, knowing the Amazon Brand-Solimo 91% Isopropyl Alcohol container contained no FMD such as a flame arrestor which made it susceptible to the flame jetting phenomenon, Amazon intentionally misrepresented the safety of design, testing and manufacture for the uses for which the product was designed and/or advertised to be used, knowing that the product had been tested and found to be unreasonably dangerous and defective with respect to the purpose for which it was sold.  Indeed, the dangerous product had been specifically investigated and tested which precipitated warnings from the ATSM and CPSC about the danger of the absence of an FMD and the potential for flame jetting in products like the Amazon Brand-Solimo 91% Isopropyl Alcohol container. These warnings were indeed ultimately made mandatory in order to protect the public.

All of this took place months before the events in this case.  The Plaintiffs justifiably relied upon these assurances.

92.   Defendant Amazon intended that its statements would be acted upon by consumers like the Plaintiffs in order to sell their products.  Indeed, Defendant Amazon knew that the Plaintiffs would probably rely on the statement, which, if erroneous, would cause loss or injury;

93.  As a result of these misrepresentations, the minor Plaintiffs suffered significant injuries proximately caused by Defendant Amazon's misrepresentations.

94.   Defendant Amazon's conduct was characterized by "evil motive, intent to injure, ill will and fraud" in that (1) Amazon actually knew of the defective and dangerous condition of the product at the time it left this Defendant's possession and control; and (2) armed with this actual knowledge and/or willful refusal to know, Amazon consciously and deliberately disregarded the potential harm to these consumer Plaintiffs.

WHEREFORE, Plaintiffs Justin L and Laura Braun, individually and as Parents and Next Friends of JLB and JGB, demand judgment against Amazon for compensatory damages in excess of Seventy-Five Thousand Dollars ($75,000.00) jurisdictional limit and for punitive damages as assessed by the jury, plus interest and costs.

## COUNT NINE
### Private Causes of Action for Damages under the Maryland Consumer Protection Act, Maryland Commercial Codes, § 13-301 et seq.

95.     Plaintiffs hereby incorporate all previous paragraphs as if restated herein.

96.     For reasons articulated above, the conduct of the Amazon Defendant also violated the Maryland Consumer Protection Act, which is part of the Maryland Commercial Code, in that it engaged in "unfair, abusive, or deceptive trade practices."

97.   Defendant Amazon used "false . . . or misleading oral and written statements, visual descriptions, or other representations . . . which has the capacity, tendency, or effect of misleading consumers."  It likewise failed to state material facts as to the safety of the products it sold to Plaintiffs which "deceived" Plaintiffs.

98.   Defendant Amazon's conduct was characterized by "evil motive, intent to injure, ill will and fraud" in that (1) Amazon actually knew of the defective and dangerous condition of the product at the time it left this Defendant's possession and control; and (2) armed with this actual knowledge and/or willful refusal to know, Amazon consciously and deliberately disregarded the potential harm to these consumer Plaintiffs.

WHEREFORE, Plaintiffs Justin and Laura Braun, Individually and as Parents and Next Friends of JLB and JGB, demand judgment against Defendant Amazon for compensatory damages in excess of Seventy-Five Thousand Dollars ($75,000.00) jurisdictional limit and for punitive damages as assessed by the jury, plus interest and costs, and reasonable attorney's fees under the Statute.

## COUNT TEN
### Punitive Damages

99.   Plaintiffs hereby incorporate all previous paragraphs as if restated herein.

100.   Defendant Amazon behaved fraudulent by willfully deceiving the Plaintiffs in stating that their product, the Amazon Brand-Solimo 91% Isopropyl Alcohol container, was recommended as fuel for the XIOYIG fire pit, and was safe for such use, while they had "actual notice" that the container was unreasonably dangerous and capable of flame jetting and explosion under reasonably foreseeable conditions of use.

101.   Defendant Amazon had "actual knowledge" of the danger as they were simultaneously promoting on their product pages and selling two other fire pit fuels that

39

contained flame arrestors (FMD) and that were specifically identified on the Amazon product promotion page would substantially reduce or eliminate the risk of such fire and explosion, and as such would substantially reduce or eliminate the catastrophic burns to consumers such as the Braun children.

102. For the reasons noted above, Defendant Amazon was aware from publications by both the Consumer Products Safety Commission (CPSA) and the American Society for Testing and Materials (ASTM), news stories and other public materials of the danger of their product without the use of a flame arrestor. Both the US Consumer Product Safety Commission and the portable fuel container industry (ASTM) had for 10 years before the injuries to the minor Plaintiffs urged the use of flame arrestors (FMD) in portable fuel containers. On January 30, 2023, one month after the sale of the Amazon Brand-Solimo 91% Isopropyl Alcohol container to the minor Plaintiffs, the CPSC made a "determination" by publication in the Federal Register, that portable non-refillable fuel containers were required, as of July 12, 2023, to include a flame mitigation device to prevent fire and explosion under the defined test procedures of ASTM F3429-20.

103. Further, such failure to comply with an applicable mandatory consumer product safety rule or standard which creates a substantial risk of injury to the public and therefore was a "substantial product hazard" (15 USC 2064(a)(1)). At a minimum by automatic operation of the statute, a substantial product hazard must be remedied by the manufacturer, distributor or retailer. The minimum required remedy is "to give public notice of the . . . failure to comply with the with a mandatory standard." At no time until December 25, 2024, did Amazon mail the notice of the danger to purchases such as the Brauns.

40

104. To this day, Amazon continues to advertise and promote their Amazon Brand-Solimo 91% Isopropyl Alcohol container fuel for tabletop fire pits. And to this day, there is still no flame arrestor or flame mitigation device in the neck of the bottle.

105. Defendant Amazon's conduct was characterized by "evil motive, intent to injure, ill will and fraud" in that (1) Amazon actually knew of the defective and dangerous condition of the product at the time it left this Defendant's possession and control; and (2) armed with this actual knowledge and/or willful refusal to know, Amazon consciously and deliberately disregarded the potential harm to these consumer Plaintiffs.

WHEREFORE, Plaintiffs Justin and Laura Braun, Individually and as Parents and Next Friends of JLB and JGB, demand judgment against Defendant Amazon for compensatory damages in excess of Seventy-Five Thousand Dollars ($75,000.00) jurisdictional limit and for punitive damages as assessed by the jury, plus interest and costs, and reasonable attorney's fees under the Statute.

Respectfully submitted,

**SHADOAN, MICHAEL & WELLS, LLP**

_____
Robert R. Michael, #04259
rmichael@smwlawfirm.com
Andrew J. Hall, #18980
ahall@smwlawfirm.com
108 Park Avenue
Rockville, MD 20850
(301) 762-5150
Fax: (301) 309-8344
Attorneys for Plaintiffs

41

42

## DEMAND FOR JURY TRIAL

Plaintiffs, Justin Braun and Laura Braun, Individually and as Parents and Next Friends of their minor children JLB and JGB, by and through their attorneys, Robert R. Michael, Esquire, Andrew J. Hall, Esquire, and Shadoan, Michael & Wells, LLP, demand a trial by jury of this action.

_____
Robert R. Michael